Good morning. May it please the Court, Gerald Fonseca on behalf of Helen Shane Hirakawa, Gwendolyn Capillo, and Herman Capillo. This is a consolidated appeal. I will be arguing on behalf of the Hirakawa and Capillo defendants. I have split the time for argument with the attorney for Cindy Tamura. I will be arguing first on certain issues. First, I would like to address the issue of whether or not the lower court erred in granting a motion for summary judgment where there were material issues of fact raised by the appellants. One of the issues that we raised is the state of mind of Shane Hirakawa at the time that he committed these acts. In their brief, the appellees argued that the intent of Shane Hirakawa was immaterial in determining whether or not this was a covered event. We disagree. In Derry Road Partners, the Hawaii Supreme Court set out the burdens of proof in a motion for summary judgment dealing with a coverage issue. In that case, the Hawaii Supreme Court said that the non-moving party cannot rest on mere allegations or denials, but they must set forth facts as showing that there is a genuine issue for trial. With regard to the insurer's burden, the Hawaii Supreme Court said that the insurer may only disclaim a duty to defend by showing that none of the facts upon which it relies could be resolved differently in the underlying action. In this case, we presented evidence to the trial court, evidencing the state of mind of Shane Hirakawa. We showed the lower court that back in 1996, Shane Hirakawa was admitted to a psychiatric hospital. It's called Kahimuhala. They run a series of health care facilities. The one that Shane Hirakawa was admitted to was an adolescent psychiatric hospital. And in that case, back in 1996, Shane Hirakawa was described as having a psychosis in which he would blur the distinction between reality and his fantasy world. We attached to our motion for summary judgment, our opposition to summary judgment, and argued to the lower court that Shane Hirakawa, who was deposed in the underlying action, indicated that he had no idea as to what he was doing on the date of the act, on the date of the injury. He had no plans to commit any kind of action against Dana Shigemura, that he had no idea as to what purpose he had for walking towards the schoolyard on the afternoon that he actually hit her with the sword. Was he criminally prosecuted? He was criminally prosecuted in the family court. Did he raise this as a defense? Pardon me? Did he raise an insanity defense? The case did not get that far. He was examined by a psychiatrist. He then entered a no-contest plea to the offense. It didn't get to the point where an insanity defense had to be raised, but he was certainly examined for purposes of mental fitness. He chose to enter a plea of no-contest? He chose to enter a plea of no-contest. That suggests to me that he didn't want to or his counsel didn't want him to defend on the merits. I don't understand your statement that it didn't reach that point. I mean, when somebody makes the decision to enter a plea, whether it's no-contest, Alford, or guilty, they've made some determinations about what defenses can be asserted and what can't be asserted ordinarily. Isn't that true? That is true. It didn't get to the point where a three panel was convened to determine his fitness for trial or his mental state at the time of the commission of the act. Was there a plea colloquy? Pardon me? Was there a plea colloquy in the criminal case that you're aware of? I am not aware of it. Did the judge make any inquiry at all into mental state, even to determine whether Shane had the capacity to knowingly and intelligently give up his rights? That is something that the courts routinely do. Because this was a family court matter and the records were sealed, we don't have a transcript of the actual change of plea, but I assume that that, in fact, happened because that is what typically happens. Well, counsel, can a no-contest plea be used as evidence of intent under Hawaii law? Not as evidence of intent, but as rebuttable evidence that a crime had been committed. We were arguing to the lower court in this case. Well, what's the difference? In other words, if it's rebuttable evidence that a crime has been committed, the elements of the crime would include intentional actions on his part, would it not? We're arguing that the intent issue was still an open question, that there was no dispute that Shane had a sword, that he actually struck Dana Shigemura. We were not disputing the action part. We were disputing whether or not he intended to commit the act of striking her with the sword. So from a point of view of the change of the no-contest plea, yes, we did not dispute the fact that he struck her with the sword. We were disputing the fact that whether or not he intended to strike her with the sword. The district court did not rely on that no-contest plea. Is that not correct in reaching his decision? We believe that they did, that the lower court did, because it's clearly mentioned in. . . Mentioned, but that doesn't mean that it relied on it. Well, I'm taking that assumption based on the fact that they mention it, and he then cites the Blanco case. The Blanco case involves a situation in which there was a no-contest plea, and the Hawaii Supreme Court said, in essence, where you have an intentional act viewed from the point of view of the no-contest plea and a subsequent finding of a conviction based on a no-contest plea, you can use the reasonable man standard and say whether or not a reasonable person in the shoes of the insured would have intended the consequences of his actions. From that, we infer that the lower court looked at the no-contest plea in this case and said, yes, Shane intended to do his act. Therefore, we will apply the reasonable man standard and say that we could infer that he reasonably believed that the act of striking her with the sword would have caused these injuries. Well, what's the effect? Dr. Matthews testified in the family court that he was out of touch with reality at the time, and he repeated that he wrote both a letter to the family court judge and then testified in court to that effect. And Shane Harakawa also testified that he had no idea what he was doing at the time. What's the effect of that type of testimony, which would suggest a factual question, with his later then entering a no-contest, no-law plea? Going back to my argument that I mentioned a few minutes ago, we believe that there's a distinction when you enter a no-contest plea, that he was not disputing the fact that he struck her with the sword. He was disputing the fact of whether or not he intended to strike her with the sword. Is the crime of which he was convicted a crime of intent? Attempted murder, as I understand it, is usually an intent crime. It is an intent crime. It's a specific intent crime. So you have an adjudication in family court that he intended the act. Yes, except that under Hawaii law, you can use a no-contest plea. No, I'm not. Let's get by the plea. Okay. Let's assume for a minute we don't care how the family court got there. But what you have is an adjudication that he committed the act which required specific intent. Doesn't that end it? Why isn't that collateral estoppel in the civil case? Because the no-contest plea has a specific meaning. You're missing the question. What you have is an adjudication. If there had been no plea and they had gone to trial and there had been a finding of guilt, you would have an adjudication that he was guilty of attempted murder. That's what you have here. So it doesn't matter, for the purpose of my question, how the family court got there. What you have is an adjudication of guilt. Does that have any weight in the civil case? I don't believe it does on the issue of intent. Why not? The family court found intent. Had to in order to accept the plea. They found intent for purposes of the criminal action. Right. That's a higher burden of proof. For purposes of the criminal case, Shane had the intent to do harm. He intended to murder her. So why doesn't that bind in the civil case? We believe, getting back to the issue of whether or not it can be used in the civil court, the Hawaii Supreme Court only saying that a no-contest plea. But you're still not getting to the ultimate question. I apologize for that. I don't care how the family court got to its adjudication of guilt, whether it was a no-contest plea or a trial or whatever, you have an adjudication of guilt by the family court. That's correct. You can't ignore that. Under Hawaii law, what's the effect of that in the civil case? The effect of that is that you can use it to show that the crime has been committed, but it is not conclusive on the liability in the civil action against the insured. Is your argument that notwithstanding the determination of the family court that Shane had committed attempted murder and not asserted any kind of mental defect as a defense, that you're entitled to relitigate that in the civil case, that the conclusion that it's a crime has little or no bearing on whether there was intent for civil purposes? Is that your argument? We're arguing that we were not disputing that he committed an act, but for purposes of insurance coverage we were arguing that it was an unintentional act. The Supreme Court has told us, at least in the police officer liability situation, and I'm referring to Heck v. Humphrey, that you can't bring a civil action if an element of the civil action would require, in essence, relitigating what went on in the criminal case. In other words, in the criminal situation, and this is limited to police officer liability and that kind of thing, at least so far, but the notion of Heck v. Humphrey is that you can't use the civil case to go back and relitigate what happened in the criminal case because that's over and done with. Well, is that true with the Blanco case? The court said a plea of no contest by the weight of authority cannot be used against the person making it as an admission in any civil suit for the same act. How does that language from Blanco affect the issues that have been discussed here? What the appellees did in the court below was to try to use the no contest plea to get to the point of arguing there was an intent to commit the act. They said, look at the facts. He entered a no contest plea. Therefore, he intended the acts. Therefore, we can apply the reasonable man standard to determine whether or not he intended or it was foreseeable that injury would result. Would it make any difference how the family court got to its conclusion, whether it was by plea or otherwise? I think it would make a difference. If he entered a guilty plea, we wouldn't be here. Why? Because there would be a specific finding or admission on the part of Shane Hirakawa that he intended to commit the act. Even in family court? Even in family court. Let me see if I can move the argument to the next level. Assuming that the court were to find that Shane acted intentionally, does that necessarily bar your client from recovery? There are other claims raised by the plaintiffs in the underlying case. One of them is simple negligence, a failure to do what a reasonably prudent person would have done under given circumstances. Is this a claim against the grandparents? This is a claim against Shane individually. There are other claims against the grandparents sounding in negligence, including negligent entrustment, inflection of emotional distress. So there are other negligence claims separate and apart from the intentional tort claim. But if Shane acted intentionally, he's got no coverage, regardless of whether the grandparents might have coverage. Is that fair? If Shane acted intentionally, there is no coverage for Shane. I would agree to that. What the court did was, we believe, impermissibly shift the burden of proof in this case. In the Derry Rhodes case, the Supreme Court of Hawaii was very clear that the only burden on the part of an insured is to present facts which show that there is genuine issues for trial. In this case, what the court said was that the defendants have not shown that Shane's attack with a samurai sword was accidental. So what the court was looking for was proof by the appellants verifying that an accident occurred. Isn't that the insured's burden to bring himself within the coverage of the policy, which covers accidents? So the insured has the burden of showing an accident. Well, the insured has the burden of bringing forth facts showing that there are genuine issues for trial. In the Derry Rhodes case, there was a long discussion by the Hawaii Supreme Court as to whether or not extrinsic evidence should be used by the insured, excuse me, the insurer, in a motion for summary judgment. And one of the concerns that the Hawaii Supreme Court had was that there could be situations in which the Procrucian dilemma would be raised, in which the insured would be forced to adduce facts indicating or implicating his liability in the underlying case just to show coverage in a deck action. The district court in this case placed Shane Hirakawa in that same situation, in that Procrucian dilemma. What it did by saying, well, Shane hasn't shown that it was accidental, was to place the burden on him to come forward with facts indicating that this was an accidental incident just to get insurance coverage. This was the very scenario that the Hawaii Supreme Court said you cannot put the insured in. All their burden is to do is to raise facts, genuine issues and material fact for trial. And that's what we did in the lower court. We showed that. You don't have to save any time for your cohort to argue. It could be a long trip back to Honolulu if you don't let him say something. If there are no further questions, I will turn the floor over to him. Thank you very much, Your Honor. I was getting nervous. If I may briefly address the primary point that seemed to be concerning this Court, and that is the effect of the no contest plea. I believe Judge Zilley hit it on the head, and the language from Blanco indicates that while it is some evidence of the act that was committed, it is not conclusive evidence. So it would be, Judge Hawkins, some evidence that Shane committed attempted murder, but it is not conclusive evidence of that. Was the effect of the adjudication of guilt argued separately, or did it go off on the plea, the no contest plea? To me, there's a difference between the adjudication by family court and the plea by Shane. I know family court for juveniles operates under unique rules, so there isn't a finding of guilt. It is simply an adjudication, and it is not intended to have effect later in life for just this sort of purpose. They cut juveniles a break, and in fact, Shane Hirakawa only did two years in a youth correctional facility for this, and then he was back out living next door to my client. The point being in all of this, what Northern Insurance, I'm sorry, what Dairy Road Partner says quite clearly is you can't rely on this extrinsic evidence when it is subject to dispute as a basis for claiming there's no duty to defend. The burden on Northern Insurance on this motion was extremely high. Under the Dairy Road Partner language, they had the burden of showing it was impossible that my client would prevail on a covered claim against Shane Hirakawa. Now, we've alleged intentional conduct and negligence conduct, and he is taking the position that he didn't act intentionally. He only acted negligently. By merely submitting this extrinsic evidence on the motion for summary judgment, Northern Insurance violated the rule of Dairy Road Partners. When the Supreme Court referred to that evidence in its order, again, the rule in Dairy Road Partners against extrinsic evidence was also violated, and in fact, on this appeal, Northern Insurance once again hits all this evidence in its answering brief, and I believe the rule in Dairy Road Partners has been violated again and again in this case because regardless of the effect of the no contest plea, it's not conclusive evidence of his intent. What is the effect? I want to fast forward to the merits of your coverage argument. What is the effect if the court does find that Shane acted intentionally and that the district court was correct in his finding of that fact? Does that bar the grandparents from recovery? I don't believe it does for this reason. I believe that the combination of the intentional act exclusion and the severability clause creates an ambiguity, and you've been cited to a number of cases on this from both parties. Northern Insurance cites you to cases that says there is no such ambiguity, that if there's an intentional act by any insured, it bars coverage as to all. On the other hand, we've cited you to a whole number of cases that say because of the severability clause, you look at it on an insured by insured basis as having a separate policy of insurance. Because there's two lines. The language was one or more insureds in the exclusion. What if the language said which is intended by the insured? What would the result be there? The cases hold that if it's the insured, that would refer only to the insured committee in the act. That would be Shane. Grandma wins. Absolutely. And I don't think my opponent would dispute that. But wasn't that the way the policy was actually written until there was an endorsement that changed it? Precisely, Your Honor. And it changed it from the insured, Grandma wins, to one or more insureds, which is something different, is it not? It is something different, Your Honor. And why does Grandma win under the one or more insureds? I believe Grandma wins because I believe it's then ambiguous. One or more insureds, I would agree, is probably closer to any insured than the insured. And there is plenty of case law, and we've cited you to it, that suggests even under those circumstances, the reasonable expectations of the insured might be that you're going to look at me separately because of the severability clause. And even though it says any insured, you're only looking at me. Because there's two lines of cases out there interpreting this type of language differently, I think you can agree with me that there's an ambiguity in the policy. If the courts can't even agree on what it means, how is an insured going to? Is there any case that interprets the language of this policy? No, there's not, Your Honor. Neither side has cited you to any case. In fact, we moved for certification on this issue because, of course, the Hawaii Supreme Courts haven't decided it either. Do you contend that the words one or more insureds means intended by insured A, insured B, or insured C, or insured D? In other words, with the severability, we have to look at each separately? Well, we've cited you to a number of cases that say exactly that, even as to the exclusion. For example, you would only look at me, Your Honor. You wouldn't consider the intention. Well, what does the little letter S at the end of insured do to that argument? Because it says not one or more insured, but one or more insureds, plural. So doesn't that pick up A and B and C? Well, we've cited you to the cases from Supreme Court of Massachusetts, the Worcester v. Marnell, that under the phrase any insurers, which there is a great deal of case law, that that's not the case, that the reasonable expectations of the one particular insured you're looking at is that you're only going to look at that insured. And so my point being is that there's ambiguity in the case law. And if the courts can't agree on what it means, Your Honor, the courts don't have an agreement on your precise question. If a client came into my office this afternoon and put this policy in front of me and said, I acted negligently, my co-insured acted intentionally, what is the result? I would have to say I can't tell you for sure because the courts can't even agree. And if the courts can't agree, there's an ambiguity. And the ambiguity should be interpreted liberally in favor of coverage. Tell me the leading case that you used. Is this Worcester Mutual Insurance v. Marnell, the Massachusetts case? Is that the case you're relying upon? We're relying to a number of cases, Your Honor, a number of state court cases. Worcester v. Marnell is from the Supreme Court of Massachusetts. Catholic Diocese v. Ramers from the Supreme Court of Kansas. We also cited you to CP v. Allstate from the Supreme Court of Alaska. And I believe those cases are persuasive. My opponent has been citing you to federal cases attempting to predict state law. That's what Allstate v. Kim did. And, in fact, that's what the Carbone v. General accident, that was actually a Pennsylvania federal court attempting to predict New Jersey law. I'm citing you to Supreme Court cases interpreting their own state law. And I know I've gone far over in responding to your questions. I thank you for the extra time. Thank you. We'll hear from the other side. Good morning. I'm Keith Hirooka, appearing for Northern Insurance Company of New York. With respect to the no contest plea, Judge King below didn't rely on it in reaching his decision. And because, and even if he did, because the standard of review here is de novo, this court need not rely on a no contest plea at all and affirm the judgment of the district court. That's because under Hawaii law, the subjective intent of the person who did the act is not material to a determination of whether the bodily injury that resulted was expected or intended. And that's the Blanco case and the Karahong case that I cited in my briefs. So the court on appeal could entirely disregard the no contest plea. But doesn't the coverage depend on whether the insured intended his consequently acts? In other words, that's what the policy talks in terms of intent. That's subjective, is it not? The policy speaks in terms of intended or expected. And what's the difference between those two words? Intent might in some cases connote or denote specific intent or subjective intent. However, expected in the context of bodily injury as a result of a volitional act, which nobody disputes is what we have here, it's a volitional act. The Blanco case and the Karahong case tell us that in Hawaii, in analyzing whether bodily injury was expected, the standard to be applied is that of an objectively reasonable person. So subjective intent is not material to a coverage determination under the circumstances of this case. Okay. Dr. Matthews testifies that Shane didn't understand what he was doing at the time. Shane himself testifies in family court that he didn't know what he was doing at the time. Isn't there at least a factual issue as to whether he expected or intended the consequences of his acts? It's a factual issue, Your Honor, but it's not a material fact. Well, isn't that the – I mean, what do you mean it's not a material fact? It's the basic fact, is it not? Whether or not he intended or expected to cause harm? Not under the language of this policy, Your Honor. Because this policy excludes coverage that is for the bodily injuries that are expected or intended, intended or expected by one or more insurants. And we know that under Hawaii law, when applying that kind of a provision in an insurance coverage context, the court must apply, must look at the objective intent of a person, a reasonable person doing that volitional act. And there is no dispute on the fact that it was a volitional act when Shane attacked, viciously attacked Dana with a samurai sword. Now, Your Honor, the psychiatrist's letter testimony in the family court proceeding makes reference to Shane having a fantasy character, an entity of a warrior. So whether Shane was acting out of fantasy or out of reality, somebody was using a sword as a sword was intended to be used. It was a volitional act. And the appellants don't contest this. Well, the doctor says he was out of touch with reality at the time. Would you concede that at least there's a factual issue on whether Shane intended the harm? I would concede there's a factual issue as to whether Shane subjectively intended the harm to Dana. So, well, but isn't that the test? Isn't it a subjective intent? I'm sorry, Your Honor, your question again? Well, is it objective or subjective intent that we're after? It's objective intent. And I submit that the Hawaii Supreme Court decisions of Blanco and Kata'ang make that very clear. Blanco is the case where the homeowner was shooting at the person throwing rocks at his chickens, and Kata'ang was the case where the person leaned out of a car and shot at the other car that was harassing them. Aren't both of those cases easily distinguishable? Because they obviously knew that they were firing a gun in the vicinity of other people. One was a rifle fired in the general direction of a neighbor, Blanco, and one was a situation where a person fired a gun and killed the driver of another vehicle that he was unhappy with as they were driving along. That's a lot different than a situation where we've got a person walking down the street with a sword who may be delusional, may be psychotic, may be not understanding what he's doing and harms another person. Is it not? Your Honor, it is not materially different because a sword and a gun, a hand grenade, they're weapons. The purpose for using a gun in the way it was intended to be used is to inflict injury. The purpose for using a sword in the way it's intended to be used is for inflicting injury. But I think the difference is, I guess, that Jadzili's getting to whether the person intended the act or the injury. In the Hawaii cases, obviously, if you point a rifle in the general direction of somebody and pull the trigger and say, well, I didn't intend to hit him, that's no defense. You intended the act of firing the weapon. And that would be true of the vehicle case also, where you fire at the other car to frighten the guy away and you end up killing somebody. Here, the question is, did the person intend the act? You don't get to the result until you find, did the person intend the act? And that issue wasn't really reached in the firearm cases. Your Honor, it wasn't specifically reached. What I was getting to is that in this case, there is no dispute that Shane striking Dana with the sword multiple times was a volitional act. Whether he was mentally incapacitated from forming a specific intent to cause injury is an issue. But what about the preliminary question of could he form the intent to commit the act as opposed to the injury? That's one step earlier. And as I said in the firearm cases, the court didn't have to reach that because there was no question the guy intended to fire the weapon. Here, there's a question, did he intend to fire the sword? And that question, I think your opponents are saying, has not been covered in Hawaii. He intended. At some level, Your Honor, because of the undisputed way the injuries were inflicted, at some level he intended for his arms to raise and for the sword to come down on Dana. There's no question he committed the act. And the Hawaii cases stand for the proposition that when someone commits a volitional act in the use of a weapon, no matter what their subjective intent was in doing that, they are deemed to expect that bodily injury would follow. Well, is this in determining whether we've got an accident here for purposes of the policy, Hawaii law looks to whether a reasonable person in the insured's position should have anticipated or expected the injury. Do you agree with that? In determining whether there was an occurrence, the Hawaii courts look to whether a reasonable person in the position of the insured, whether it was an accident from the standpoint of the reasonable from the standpoint of the insured. A reasonable person in the insured's position, in Shane's position in this situation, did he intend or expect? If we're talking about the reasonable person, but in the insured's position, isn't that inherently factual if there's any evidence that he did not intend the result? It's, it's, I'm sorry, Your Honor, it's a reasonable person standard and you apply it from. Who's the reasonable person? Is it the insured or the insurer? Insurers are always reasonable, Your Honor. I'm sorry. I'm sorry, Judge. Oh, that was a good response. But, but, but the converse is also true, is it not? Insureds are not always reasonable. And the question is, who gets to decide whether Shane was reasonable and whether he anticipated or expected the injury? Can the judge, as a matter of law, say there's no, doesn't the judge have to say there's no inference that we can take in favor of the non-moving party here? That as a matter of law, he should have anticipated or expected the injury would result? The judge, yes, Judge King and this court, if it affirms the decision, has to reach the conclusion that under Hawaii law, no reasonable person volitionally using a samurai sword to inflict this kind of an injury on a girl will be deemed as a matter of law, not to expect some kind of an injury to result. And that's true even if this person, this person we're talking about, was psychotic at the time of the attack and out of touch with reality at the time and didn't know what he was doing. Did you know what you were doing? I had no idea. He says in his testimony. That's true, Judge, really, because the test is not what a reasonably psychotic person would have expected. The test is what a reasonable person, an objectively reasonable person, would have expected when volitionally using a samurai sword to attack someone else. Let's move forward. Let's assume first that we conclude that Shane acted intentionally. What's the effect on the other insureds? They are all excluded from coverage. And what does the, does the, is the phrase, this policy does not apply to bodily injury, which is expected or intended by one or more insureds. What does that mean? Is that ambiguous? No, it's not. It's entirely consistent with the severability clause, because the severability clause contemplates that there may be multiple insureds covered under one policy. Well, isn't it one possible reading of this that it means that if there are three insureds and two of them act intentionally, there's no coverage? For any of them, yes. Because two are one or more. Well, let me state it the other way. Couldn't this exclusion have been written in a way that married with the severability clause? To remove any ambiguity. That married with the severability clause? Yeah.  Just off the top of my head, if this sentence under personal liability coverage E read, if any insured under this policy commits an intentional act, there shall be no coverage for any other insured under this policy. That would not be correctly stating the nature of the exclusion, Your Honor, because the exclusion doesn't apply to. I've heard you say that the intention of this sentence is that if there are three insureds, A, B, and C, and A acts intentionally, there's no coverage for B and C, notwithstanding the severability clause. That's your position, isn't it? Yes, it is. But the exclusion doesn't apply to the nature of the insured's conduct. The exclusion applies to whether the bodily injury that resulted was expected or intended by any, by one. Or my question that way. If A, your argument is that what the sentence means, if A, expected or intended, et cetera, then there's not only no coverage for A, there's no coverage for B and C. Yes. And my question is, isn't there a way to write that in a way that says that explicitly, that removes absolutely any ambiguity? Well, Your Honor, I, first of all, I don't believe that it's ambiguous the way it's written. So one of the ways it could be written is to tell the insured. If it's not ambiguous, why have courts found it ambiguous? Courts have not found this particular language ambiguous. The courts have found the word any, minority of courts have found the word any to create an ambiguity. Any, stronger? Apparently not, Your Honor, because one or more has never been litigated that I can tell. And any has been. Let me phrase the question in other ways. Any court found this precise language unambiguous? I'm not aware of a decision that on this language either way, ambiguous or unambiguous. Let me, may I? Yes. As I understand the way you interpret this, am I correct, severability, you don't need the severability clause. I mean, it doesn't, in other words, if you didn't have the severability clause, you'd make the same argument and wish the same result. That is that it doesn't apply when it's intended by one or more of the insured. So if any insured intends the act, no insured is covered. Yes. So you don't, the severability clause does nothing for purposes of promoting or detracting from that argument. Is that fair? That's correct, Judge. It has absolutely no effect on the application of the exclusion. Aren't we directed to try and make every part of the policy language have some purpose? Your brief talked greatly about the severability clause. Now you tell me you don't need it. Well, Your Honor, that's because I didn't rely on the severability clause in the motion below. So I addressed the severability clause at length because the appellants contended it created an ambiguity. But, Your Honor, there are many parts of this insurance policy that don't apply. The whole property coverage section doesn't apply. That's first-party property coverage. So just because it is true that the court should construe the policy as a whole, but it's not correct that the court need apply every single provision if it doesn't apply. What the severability provision does, which isn't at issue in this case, but what it does is, for example, create the result that the Hawaii Supreme Court reached in First Insurance Company v. State, which is cited in my brief, albeit not for this reason. In that case, very briefly, because I only have two and a half minutes, the State of Hawaii retained the general contractor to construct an intersection. There was an accident at the intersection. The State of Hawaii and the contractor were both sued. The State was sued for negligent design and negligent signage. The contractor was sued for negligent construction. The State had a contract with a contractor that required the contractor's insurance company to defend and identify the State for the State's liability for the contractor's negligence. It's a vicarious liability. The State tendered. The carrier declined. Actually, the carrier said, we're defending you by providing a defense counsel to the contractor. But by the time the case got up to the Supreme Court, the court said that because the allegation in the complaint against the State was that it was vicariously liable for the acts of the contractor, and that would be covered under the policy if it were proven, the carrier had a duty to defend the State. The carrier said, we did because we defended the contractor. And if we got the contractor off, the State would have no covered liability, so we did our job. The Supreme Court said, no. They didn't specifically mention the severability provision, but the effect of the severability provision is what the court must have relied on when it said First Insurance had to provide separate counsel for the State. Its appointment of counsel for Sonomura, the general contractor, did not act to discharge First Insurance's obligation to defend the State. And that's at 665 Pacific Second at 655. So what the severability clause does, Your Honor, is it creates a situation where an insurance company must examine each tender separately, and that is what, in fact, happened in this case. Let me ask, if this exclusion had said which is expected or intended by any insured, you would win. We would win, yes. If it said if it was expected or intended by and insured, you would win. We would win, yes. That would be clearly we'd understand what that meant. But your policy says something a little different, doesn't it? If you intend that result, why don't you say it in that way, and insured or any insured? The courts are clear on what that means. But what you've got in this policy is one or more insureds. And you tell us that no court has, that you know of, has told us what that means. Well, Your Honor, the courts aren't exactly clear. This is a policy that applies in many different jurisdictions. My client writes in different states. The appellants have cited cases which stand for the proposition that any insured creates an ambiguity in connection with a severability clause. None of those decisions are binding on courts applying Hawaii law. But the point is the jurisdictions aren't clear on the applicability or the ambiguity or non-ambiguity of the phrase any insured. So it's not an issue for the court to decide about why the words one or more insureds were used. What the court is tasked to do in this case is to determine whether the phrase one or more insureds is ambiguous. And we submit one or more insureds clearly contemplates a situation where there are multiple insureds. And if one or more of them expected the bodily injury to happen, then none of them are covered under the policy. All right. Thank you, Your Honor. Good argument. Thank you. May I just state that I know that at least one of the parties asked that this case be submitted on the briefs because of the great distance that would have to be traveled by the litigants to come here and argue. But I, for one, have benefited by the oral argument, and I thank all of you for your briefs and oral argument today. I certainly agree. The case has been well argued. I will give the appellants two minutes in rebuttal with a strong suggestion that you not try to split it. Thank you, Your Honor. Just briefly to touch on the Blanco and Caron cases. As this Court noted, there was no dispute on the intentional nature of the act. In fact, in Blanco, there was a stipulation. There was stipulated facts on the motion for summary judgment, and the person requesting insurance said, I intended to fire the weapon. And likewise, in Caron, although it wasn't a stipulated fact, it was an admitted fact. I intended to fire the weapon. We are, as this Court noted, one big step removed from that. We do not have an I intended to swing the sword. We have a psychotic individual. And on that basis, those cases on which Northern Insurance relies, I believe, are totally distinguishable. Unless the Court has further questions, I don't have anything else at this time. It's not. Thank you. The case just argued to be submitted, and I agree with my compatriots. The case is very well presented. And from our standpoint, it was certainly worthwhile having you here. I hope on the flights over and back you agree. So welcome to San Francisco, and see you some other time, perhaps.
judges: Tg Nelson, Hawkins, Zilly